IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEPHEN L. GRANT,

                Plaintiff,

v.

CHONG XIONG,

                Defendant.

OPINION and ORDER

22-cv-575-jdp

---

Plaintiff Stephen L. Grant, proceeding without counsel, is now incarcerated at New Lisbon Correctional Institution. The events at issue occurred at Columbia Correctional Institution (CCI). Grant proceeds on First Amendment retaliation and Eighth Amendment medical care claims against defendant Chong Xiong, a correctional sergeant at CCI. Grant alleges that after he complained to Xiong about his conditions of confinement, Xiong issued him a false conduct report, denied him a phone call, and interfered with his receipt of ice to treat his back pain.

Xiong moves for summary judgment. Dkt. 36. Video footage shows that Xiong had a legitimate penological reason to issue a conduct report, and there's no evidence that Grant's complaints about his conditions of confinement caused Xiong to take the other retaliatory acts. I will grant Xiong's motion and dismiss with the entire case with prejudice.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Grant resided in housing unit six (HU6) because he uses a wheelchair and that unit has access to an elevator. Xiong was assigned to HU6.

The metal cell doors at CCI have metal traps that open downward and make a sound when they come to a stop against the doors unless officers take care to prevent them from falling open. Grant says that the resulting sound was "outrageously loud" and would startle him and other prisoners. Dkt. 57 ¶ 7. In late December 2019 or early January 2020, Grant started to orally complain to Xiong about the noise Xiong made when opening the traps.

**A. Conduct report and disciplinary hearing**

On March 22, 2020, Xiong was supervising prisoner phone calls in Grant's housing unit. When Grant finished his phone call, he rolled his wheelchair down the hall and stopped at a prisoner's cell to speak with him. Xiong told Grant to return to his cell over the intercom. Grant continued down the hall and entered his cell after making statements toward Xiong.

Based on that incident, Xiong issued a conduct report to Grant for disobeying orders, disrespect, and disruptive conduct. Dkt. 40-1. A disciplinary hearing was held on April 6, 2020. *Id.* at 5. The hearing officer, Lt. Bryan Gerry, received in evidence the conduct report, the testimony of Grant and two prisoner witnesses, and video footage of the incident. Dkt. 40 ¶ 18; Dkt. 40-1 at 5, 8. Gerry found Grant guilty of disobeying orders and disrespect. Based on the conduct report and video, Gerry found that it was likely that Xiong and Grant were arguing as Xiong directed him to enter his cell and that Grant called Xiong a "bitch." Dkt. 40 ¶¶ 22–23; Dkt. 40-1 at 6. Gerry imposed 16 days' cell confinement, and the warden approved that disposition.

**B. Missed phone call**

In HU6, a prisoner signs up to use the phone by writing his name on a sheet with a plastic cover. Grant says that, on April 22, 2020, he signed up for a phone call during first shift and that an X was placed next to his name on the plastic sheet to indicate that he had signed

2

up. *See* Dkt. 57 ¶¶ 71, 74. Grant asked Xiong about using the phone around 7:30 p.m. to 8:00 p.m., by which time it was too late for him to make a call because the phones were turned off. Dkt. 65 ¶ 29.

### C. Distribution of ice

Grant suffers from chronic low back pain and has a medical restriction to use an ice bag three to four times a day to treat that problem. *See* Dkt. 57 ¶¶ 133, 172; Dkt. 57-2 at 5. Grant is also allowed to leave his cell to obtain a cup of ice with his medication. *See* Dkt. 39 ¶ 68; Dkt. 57 ¶ 95. The parties don't say why Grant received a cup of ice along with his medication.

Some prisoners were on "feed cell" status, which meant that their meals and medications were delivered to their cells. Xiong says that, before he started working in HU6, he learned that prisoners on feed-cell status weren't allowed to leave their cells to obtain medications. *See* Dkt. 39 ¶¶ 57–59. Grant says that his feed-cell restriction didn't stop him from leaving his cell to obtain his medication and a cup of ice. *See* Dkt. 57 ¶¶ 95, 109.

Xiong says that, on June 10 and 11, 2020, he delivered cups of ice to Grant's cell because he didn't think that Grant was allowed to leave his cell to obtain his medication and cups of ice. *See* Dkt. 39 ¶ 61. Xiong further says that an institution complaint examiner later clarified that Grant was allowed to leave his cell to obtain his medication and a cup of ice. *Id.* ¶¶ 63–64. From then on, Xiong allowed Grant to leave his cell for that purpose.

On June 5, 2022, for reasons that are immaterial, Grant couldn't leave his cell to obtain an ice bag. *See* Dkt. 39 ¶ 32; Dkt. 57 ¶ 170. Xiong was the only correctional staff member available to conduct medication pass on HU6 and housing unit seven (HU7) that evening. Xiong says that he would usually finish medication pass before filling a prisoner's ice bag and returning it to him. Dkt. 39 ¶ 80.

3

Grant asked Xiong for an ice bag, and he says that he first made this request around 8:00 p.m. *See* Dkt. 39 ¶ 83; Dkt. 57 ¶¶ 155–62. Grant also says that he told Xiong that he was in "a lot of pain." Dkt. 57 ¶ 157. Further, Grant says that Xiong finished dispensing medication at 8:17 p.m. and was available to fill his ice bag and deliver it to him. *Id.* ¶ 167. Xiong adds that, at that time, Grant went to HU7 to intentionally delay his receipt of the ice bag. *Id.* ¶ 171. Xiong delivered Grant's ice bag at approximately 9:30 p.m. *See* Dkt. 39 ¶ 86; Dkt. 57 ¶¶ 150, 175.

ANALYSIS

A. **Retaliation claim**

Grant bases his retaliation claim on three sets of events. First, Grant alleges that Xiong issued a false conduct report to retaliate against him after he started to complain about the noise that Xiong made by allowing traps to fall open. Dkt. 5 at 3–4. Second, Grant alleges that Xiong retaliated against him by refusing to allow him to leave his cell to make a phone call. *See id.* at 4. Third, Grant alleges that, shortly after he complained about Xiong's conduct, Xiong didn't allow him to leave his cell to obtain cups of ice on June 10 and 11, 2020, and Xiong delayed taking an ice bag to his cell on June 4 and 5, 2022. *See id.*; Dkt. 3 ¶¶ 26, 41–42.

To prevail on a retaliation claim, Grant must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation severe enough to deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in Xiong's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The basic rule is that the First Amendment protects a prisoner's right to file grievances, orally complain about possible civil rights violations, and pursue nonfrivolous civil

4

rights lawsuits. *See id.* at 551; *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015).

Xiong doesn't dispute that Grant's complaints, whether oral or written, about the trap noise were protected. The case turns on the second and third elements: severity and causation.

A deprivation is materially adverse if it "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). The "harsh realities of a prison environment" inform the determination "of what actions are sufficiently adverse." *See Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020).

Grant must also show "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). To prove causation, Grant must show that Xiong had actual knowledge of the protected activity. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021); *Healy v. City of Chicago*, 450 F.3d 732, 740 (7th Cir. 2006). Where the plaintiff fails to provide direct evidence of causation, he may show causation through "suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other persons in the protected group." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 586 (7th Cir. 2021). Suspicious timing by itself is usually insufficient to show causation, but an inference of causation may be appropriate if the adverse action occurs closely after the protected activity. *Id.* Even if Grant shows that his protected activity motivated a retaliatory action, Xiong prevails if he shows that "the harm would have occurred anyway." *See Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012).

I turn now to the three purportedly retaliatory events.

Grant hasn't shown that his oral complaints to Xiong about the trap noise caused Xiong to issue the conduct report. It's undisputed that Grant stopped to talk to a prisoner when he

5

was returning to his cell from making a phone call. Even if that conduct wasn't disruptive under prison regulations, it wouldn't violate the Constitution for Xiong to order Grant to return to his cell. *Cf. McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019) ("Deference must be accorded to prison administrators in the adoption and execution of policies and practices that are needed to preserve order and ensure institutional security."). Furthermore, video contradicts Grant's statement that he wasn't arguing with Xiong about returning to his cell. *See* Dkt. 43-2. The video doesn't have audio to confirm Xiong's statement that Grant called him a "bitch," but it shows Grant repeatedly looking in Xiong's direction and moving his head in an animated manner as he talks to him. Gerry found Grant guilty of disobeying orders and disrespect, which further shows that Xiong issued the conduct report for a legitimate penological reason. *Cf. Adamski v. Heath*, No. 21-cv-215-wmc, 2023 WL 1404248, at *10 (W.D. Wis. Jan. 31, 2023) ("[A] federal court is not in the business of second guessing the outcome of a [] conduct report . . . ."). A reasonable juror couldn't conclude that the conduct report was retaliatory.

Grant hasn't shown that his complaints about the trap noise caused Xiong to deny him a phone call on April 22, 2020. Grant says that Xiong learned about his latest complaint before the denial of the phone call sometime between March 9 and March 12, 2020. *See* Dkt. 57 ¶¶ 21–22. The denial of the phone call comes more than five weeks after Xiong learned of the last complaint. That timing doesn't suggest causation. *See EEEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 952–53 (7th Cir. 2001) (temporal proximity of six weeks "insufficient to establish retaliation"). Grant says that he complained to Xiong on "several occasions" about the trap noise. Dkt. 57 ¶ 92. But that is too imprecise to show that any of those complaints

6

occurred shortly before April 22. And there's no other evidence that Grant's complaints about the trap noise motivated Xiong's alleged denial of the phone call.

Even if Grant could show that Xiong denied him a phone call for retaliatory reasons, I explained in my screening order that a single denied phone call is not itself a serious enough deprivation to support a retaliation claim. Dkt. 5 at 4. I read Grant's amended complaint generously and construed the denial of a phone call "to be part of a pattern of retaliatory harassment." *Id.* But, for reasons stated in this opinion, Grant hasn't shown that Xiong's other acts were retaliatory. Besides, no reasonable juror could conclude that the denial of a single phone call was severe enough to support a retaliation claim.

Grant hasn't shown that his complaints about the trap noise caused Xiong to stop him from leaving his cell to obtain cups of ice on June 10 and 11, 2020. Grant made the complaints closest to those events on May 13 and May 27, 2020. *See* Dkt. 57-27 at 1; Dkt. 57-33. The May 13 complaint doesn't suggest causation because Grant made it nearly a month before the alleged retaliatory acts. *See Clark v. Lind*, 761 F. App'x 633, 637 (7th Cir. 2019) (temporal proximity of one month insufficient to show causation). The May 27 complaint is closer in terms of timing, but there's no direct evidence that Xiong knew about that complaint. *See* Dkt. 57-33. Even if Xiong knew about that complaint, taking an action two weeks later alone wouldn't create a triable issue on causation. *See FKFJ*, 11 F.4th at 586; *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). Grant purports to provide the missing causal link by saying that Xiong intentionally misled him to believe that his medical restriction for ice had expired. *See* Dkt. 57 ¶¶ 95, 109. But Grant's medical restriction was for an ice bag, not a cup of ice. Dkt. 57-2 at 5. In any case, even if Xiong misled Grant and that effort suggested that he "had some sort of animus against" him, animus alone isn't enough to prove causation. *See FKFJ*,

7

11 F.4th at 586. Grant must provide evidence showing that Xiong's "animus is based on the protected activity and that [Xiong] acted in retaliation based on that animus." *See id.* Grant hasn't made this showing. No reasonable juror could conclude that Grant's complaints about the trap noise caused Xiong to refuse to allow him to leave his cell to obtain cups of ice on June 10 and 11, 2020.

Grant contends that Xiong retaliated against him by intentionally delaying his receipt of an ice bag by approximately 75 minutes on June 5, 2022. Grant made the complaint closest to that date on May 10, 2022. Dkt. 57 ¶ 126. But Grant made that complaint to Corrections Program Supervisor Lindsey Walker, and there's no evidence that Walker shared it with Xiong. *See id.* In any case, the timing between that complaint and Xiong's delay alone doesn't suggest causation. Furthermore, a short, one-time delay in receiving medical ice, even for a painful condition, wouldn't be enough to dissuade a reasonable prisoner from complaining about his conditions of confinement. People in the community often must wait longer to receive emergency care, let alone an ice bag, a conservative treatment for chronic pain. *Cf. Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). No reasonable juror could conclude that Grant's complaints about the trap noise caused Xiong to retaliate against him by delaying his receipt of an ice bag.

I will grant summary judgment to Xiong on Grant's retaliation claim.

## B. Medical care claim

Grant proceeds on a medical care claim based on the allegations that Xiong didn't allow him to leave his cell to obtain cups of ice on June 10 and 11, 2020; and (2) delayed taking an ice bag to his cell on June 5, 2022. I take Grant to contend in his summary judgment materials

8

that Xiong interfered with his treatment for chronic lower back pain by depriving him of ice on those three dates.

To establish a medical care claim, Grant must show that he had an objectively serious medical need that Xiong consciously disregarded. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Conscious disregard requires that Xiong is subjectively aware of the serious medical need. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). That means that Xiong knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A delay in medical care for painful conditions violates the Eighth Amendment only if the delay was objectively "sufficiently serious or painful" "to constitute the denial of the minimal civilized measures of life's necessities." *Grieveson*, 538 F.3d at 779; *Langston*, 100 F.3d at 1240. A significant delay in effective medical treatment supports a medical care claim if the delay causes prolonged and unnecessary pain. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). To prevail, Grant must also show that Xiong's conscious disregard harmed him. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

I will assume for purposes of this opinion that Xiong refused to give Grant cups of ice on June 10 and 11, 2020. But the cups of ice were provided along with his medication; there's no evidence that they were to treat Grant's chronic back pain. The medical restriction was for an ice bag, not a cup of ice. Grant hasn't submitted any evidence that he used cups of ice to treat his back pain, much less that Xiong thought that to be the case. *See* Dkt. 39 ¶ 68.

Xiong contends that Grant denied him medical care for his back pain by intentionally delaying his receipt of an ice bag by 75 minutes. But trivial delays in providing medical care usually don't violate the Eighth Amendment, at least if the underlying condition isn't severe.

9

*See Langston*, 100 F.3d at 1240; *cf. Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) (stating that whether the delay is tolerable depends partly on the severity of the condition). Grant has chronic back pain and says that he was in "a lot" of pain during the delay. Dkt. 57 ¶ 157. Grant's frustration is understandable but, as I've explained, community members often endure longer waits to receive care for more serious conditions. No reasonable juror could conclude that a one-time, 75-minute delay in receiving an ice bag to treat a flare-up in chronic back pain was serious enough to violate the Eighth Amendment by denying Grant the minimal civilized measures of life's necessities.

**C. Qualified immunity**

Even if a reasonable juror could conclude that Xiong violated the First or Eighth Amendments, he would be entitled to qualified immunity. Qualified immunity shields state actors from liability where their conduct does not violate clearly established constitutional rights. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620 (7th Cir. 2022). In resolving questions of qualified immunity at summary judgment, courts ask: (1) whether the facts, when taken in the light most favorable to the plaintiff, show that the defendant violated a federal right; and (2) whether the right was clearly established at the time of the violation. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

"A right is clearly established where it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Stockton*, 44 F.4th at 620. In most cases, the plaintiff must identify a closely analogous controlling case finding the alleged violation unlawful, or at least a clear trend in persuasive authority showing that "recognition of the right by a controlling precedent was merely a question of time." *Id.*; *accord Reed v. Palmer*,

906 F.3d 540, 547 (7th Cir. 2018). The plaintiff bears the burden of defeating the defendant's claim to qualified immunity. *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021).

Grant didn't file a brief in opposition to Xiong's motion, and his response to Xiong's proposed facts contains no meaningful legal analysis. Grant hasn't shown that it was clearly established that the isolated and minor deprivations for which he faults Xiong could support a retaliation or medical care claim. Grant hasn't met his burden to defeat Xiong's assertion of qualified immunity.

**D. Other motion**

Grant filed a notice that he was on medical hold after going on a hunger strike. Dkt. 76. Grant doesn't specifically request any relief, so I take this filing to be a notice of his change of address. But Grant also stated that prison staff had failed to give him property related to this case in late June 2024. *Id.* at 1. But Grant's response to Xiong's summary judgment motion was due in early February 2024 and, while he didn't file a brief in opposition, he submitted several documents to oppose the motion. Grant hasn't shown that prison officials' alleged interference with his property in June 2024 prejudiced his ability to conduct this litigation. So if the notice is intended to seek a delay of any case deadline, that request is denied.

ORDER

IT IS ORDERED that:

1. Defendant Chong Xiong's motion for summary judgment, Dkt. 36, is GRANTED. Plaintiff Stephen L. Grant's First Amendment retaliation and Eighth Amendment medical care claims are DISMISSED with prejudice.

2. Grant's motion notifying the court of his hunger strike, Dkt. 76, is DENIED.

3. The clerk is directed to enter judgment and close the case.

Entered September 23, 2024.

                                BY THE COURT:

                                /s/

                                _____

                                JAMES D. PETERSON
                                District Judge